IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| DIANE VON FURSTENBERG STUDIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:06cv1356(JCC) |
| v. ) | |
| ) | |
| CATHERINE SNYDER and ) | |
| RICHARD SNYDER ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M   O P I N I O N**

         This matter is before the Court on Plaintiff's Motion for Summary Judgment and Defendants' Motion to Modify the Terms of the Preliminary Injunction.  For the reasons stated below, the Court will grant Plaintiff's Motion in part and deny it in part and will deny Defendant's Motion.

**I.  Background**

This case arises out of alleged counterfeiting, trademark, and trade dress infringement.  Plaintiff Diane Von Furstenberg Studio ("DVF") is a designer and producer of high-quality dresses and women's apparel.  DVF products are identified by DVF's federally registered trademarks ("DVF Marks"). Plaintiff alleges that Defendants Catherine Snyder, d/b/a Cathy 3254, d/b/a Katrina3254@vendio.com, katrina3254@mailstep.com, d/b/a Fairfax Trading Co., and Richard Snyder (collectively "Defendants") are manufacturing, importing, distributing, and

1

selling counterfeit DVF dresses ("Counterfeit Products") without consent or authorization, and importing, exporting, distributing, promoting, selling, and offering for sale the Counterfeit Products through an eBay account in the name of cathy3254 ("Website").  As part of its investigation, Plaintiff purchased a dress bearing DVF marks from the Website.  Plaintiff identified the dress as counterfeit by the marks and label, and identified a Herndon, Virginia location as the source of the counterfeit goods.  Plaintiff then filed suit and moved this Court for a temporary restraining and seizure order ("TRO"), order restraining the transfer of assets, order sealing the file, order for expedited discovery and preliminary injunction.  On December 7, 2006, this Court granted the motion and issued the requested order ("the Order").  On December 8, 2006, the Order was executed upon Defendants' address in Herndon, Virginia, and Plaintiffs seized a number of dresses bearing DVF marks, along with a computer and financial records.  On December 21, 2006, this Court issued a preliminary injunction against Defendants, and unsealed the case.  On January 8, 2007, Defendants filed an answer to the complaint.  On May 4, 2007, Defendants filed a motion to dismiss for failure to state a claim which this Court denied on June 25, 2007.

On August 15, 2007, Plaintiff filed a Motion for Summary Judgment on its claims of advertising, selling, and

offering for sale counterfeit dresses and requesting a permanent injunction, statutory damages, attorneys fees, and the release of counterfeit dresses to DVF.  Defendants filed an opposition to Plaintiff's Motion on September 4, 2007, alleging genuine dispute of material facts.  This Motion is currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden to show the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson* 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party opposing summary judgment may not rest upon mere allegations or denials.  A "mere scintilla" of evidence is insufficient to

overcome summary judgment.  *Anderson*, 477 U.S. at 248-52. Unsupported speculation is not enough to withstand a motion for summary judgment.  *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986).  Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant."  *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

Plaintiff seeks summary judgment against defendants on all of its claims for relief, which allege (1) trademark counterfeiting and infringement in violation of Section 32 of the Lanham Act, (2) unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, (3), federal trademark dilution in violation of Section 43(c) of the Lanham Act, (4) intentional and willful unfair competition in violation of Virginia common law, and (5) false advertising in violation of Virginia Code §18.2-216.

A) <u>Trademark Infringement and Unfair Competition</u>

          To prevail on a claim for trademark infringement and unfair competition, Plaintiff must show that it possesses "a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). The unauthorized use of a trademark infringes the trademark holder's rights if it is likely to confuse an "ordinary consumer" as to the source or sponsorship of the goods. *Anheuser-Busch, Inc. v. L&L Wings, Inc.,* 962 F.2d 316, 318 (4th Cir. 1992).

        First, Plaintiff must demonstrate that its mark is valid and protectible. Registration of a mark with the Patent and Trademark Office is "prima facie evidence of the registrant's right to use the mark, endow[ing] it with a strong presumption of validity." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir. 1984) (internal quotations omitted) (quoting *Soweco v. Shell Oil Co.*, 617 F.2d at 1184 and *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982). The presumption created by such registration "shift[s] the burden of proof from the plaintiff, who in a common law infringement action would have [had] to establish his right to exclusive use, to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such [exclusive] use." *Id.* (quoting *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 n.4 (1st

Cir. 1980)).

Defendants do not deny that the DVF marks in this action are properly registered.  Instead, they argue that the marks are not currently used in commerce and thus are not valid or protectible.  Defendants fail to introduce evidence to rebut the presumption created by registration of Plaintiff's mark.

The second element Plaintiff must prove to establish trademark infringement under the Lanham Act is confusion. Factors considered when determining the likelihood of confusion are: (1) strength and distinctiveness of the plaintiff's mark; (2) degree of similarity between the two marks; (3) similarity of the products that the marks identify; (4) similarity of the facilities the two parties use in their business; (5) similarity of the advertising used by the two parties; (6) defendant's intent; and (7) actual confusion. *Pizzeria Uno,* 747 F.2d at 1527. No single factor is dispositive, and these factors are not of equal importance or relevance in every case.  *Petro Shopping Centers v. James River Petroleum, Inc.,* 130 F.3d 88, 91 (4th Cir. 1997).  This Court will thus analyze these factors and determine, by a totality of the circumstances, the level of confusion that exists, and then determine if summary judgment is appropriate for Plaintiff.

Although no factor is dispositive, "[t]he first and paramount factor under this set of factors is the distinctiveness

6

or strength" of the mark in question. *Pizzeria Uno*, 747 F.2d at 1527. The Plaintiff's symbol, like that in *Polo Fashions*, "is a strong mark of the identity of the source ... [which] has been widely used by the plaintiff." *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (internal citations omitted). As in *Polo Fashions*, Defendants in this case used a "substantially identical" symbol "in the same manner on ... the same product." *Id.* In cases such as this one, where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Id.* (internal citations omitted). Defendants were selling items of clothing with the Plaintiff's mark in order to capitalize on the popularity of DVF's products and the strength of the mark. Defendant advertised and offered for sale reproductions of dresses with the DVF mark. This Court finds that Plaintiff possesses a valid trademark and that Defendant's use of the mark created a strong possibility of confusion, establishing the elements for summary judgment for trademark infringement and unfair competition under the Lanham Act.

          B)   <u>State Law Unfair Competition Claims</u>

As the Fourth Circuit has held, "because the test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair

competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved," the trademark holder's "state-law unfair competition claim rises or falls with his federal claims of infringement and false designation of origin" and need not be analyzed separately. *Lamparello v. Falwell*, 420 F.3d 309, 312 n.1 (4th Cir. 2005)(quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995))(internal quotations omitted).  Therefore, summary judgment is proper on the issues of trademark infringement and unfair competition under Virginia law as well as under the Lanham Act.

       C) <u>Trademark Dilution</u>

The Trademark Dilution Act provides that the owner of a famous mark can enjoin "another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark." 15 USCS § 1125(c). The Fourth Circuit has defined dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services." *CareFirst of Maryland, Inc. v. First Care*, 434 F.3d 263, 274 (4th Cir. 2006).  The Supreme Court has implied that the use of an identical mark would be circumstantial evidence of actual dilution.  *Moseley v. V Secret Catalogue*, 537 U.S. 418, 434 (U.S. 2003) (applying the previous statutory requirement of

actual dilution, superceded by amendment to 15 U.S.C. § 1125(c)(1)). After its 2006 amendment, the Trademark Dilution Act requires only that the mark be "likely" to cause dilution, a standard even more easily met. 15 USCS § 1125(c).

The Plaintiff in this case argues that the DVF mark has been diluted by tarnishment, which "generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Deere & Co. v. MTD Prods.*, 41 F.3d 39, 43 (2d Cir. 1994). It is undisputed that Defendants chose to use Plaintiff's exact mark to capitalize on its fame, but Defendants argue that the products they sold are not of shoddy quality and thus do not tarnish Plaintiff's image. They cite to the Declaration of Colleen Collins stating that it would take a "trained eye to distinguish between the Counterfeit Dress and the DCF dress," and that ordinary consumers may not be able to distinguish them. C. Collins decl. at 4. However, Catherine Snyder also admits that dresses were returned to her by customers because of shoddy workmanship. C. Snyder depo. at 177-78.

This Court finds that there is no dispute that Defendants used the identical DVF mark on the inferior-quality dresses they sold, and that such act was likely to cause dilution of the DVF mark. Summary judgment will be granted to Plaintiff

9

on its claims for trademark dilution.

### D) False Advertising under Virginia Law

Plaintiff has agreed to seek only federal statutory damages and thus has withdrawn the claim of false advertising under Virginia law.

### E) Contributory Infringement

Plaintiff asserts that Defendant Richard Snyder, Catherine Snyder's husband, is liable for contributory trademark infringement due to his involvement in his wife's counterfeiting activities. The Supreme Court has set the standard for determining contributory infringement: "Contributory infringement occurs when the defendant either intentionally induces a third party to infringe the plaintiff's mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe the service mark." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F. 3d 980, 983 (9th Cir. 1999)(quoting *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853-54 (1982)); *see also Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp. 2d 568, 572-73 (E.D. Va. 2003) *and Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996) (also applying the *Inwood* test for contributory trademark liability). The test does not "require defendant to be a manufacturer or distributor." *Fonovisa*, 76 F.3d at 265. Instead, it allows contributory liability to be imposed in cases

where defendant supplied the marketplace for the sale of goods and was "'willfully blind' to the ongoing violations" of the third party infringer. *Id.* (citing *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992)). The Fourth Circuit has held that, to be liable for contributory infringement if not a manufacturer or distributor, Defendant must have "the requisite degree of control over the activity of third-party infringers to justify extending the meaning of 'product' to their activities." *Size, Inc.*, 255 F. Supp. 2d at 572-73.

Although one does not need to be a manufacturer or distributor to be held liable for contributory infringement, the Fourth Circuit explicitly distinguished between "the more interactive role of a flea-market operator who has a significant degree of control over the activities of its clients," as was the case in *Fonovisa* and *Hard Rock Cafe,* and those where the alleged contributory infringer was "a neutral stakeholder with no direct involvement in the activities of the allegedly infringing third party." *Id.* at 573. Mr. Snyder shared a home with Catherine Snyder, sometimes carried boxes of dresses up the stairs of their home, and went with her to compare the dresses she sold online with those sold in department stores. However, it is not obvious that Mr. Snyder had a significant degree of control over her activities in a manner similar to that of a flea market operator

11

over its clients.

  Mr. Snyder also did not have the "right and ability to supervise the infringing conduct committed on behalf of the Defendant corporations," and, although he benefitted from his wife's income, he did not "receive[] direct financial benefit from the infringing conduct in the form of a substantial salary, dependent upon the success of the company" as did the defendant in *Microsoft Corp. v. Black Cat Computer Wholesale, Inc.*, cited by Plaintiffs as analogous to the instant situation. 269 F. Supp. 2d 118, 123 (D.N.Y. 2002). Viewing the facts in the light most favorable to the non-moving party, this Court finds that there is a genuine issue of material fact as to whether Mr. Snyder participated in his wife's business to the extent required to consider him to be a contributory infringer.

  F) <u>Damages and Attorneys Fees</u>

  Plaintiff has chosen to elect statutory damages instead of actual damages, as is appropriate under 15 U.S.C. § 1117(c). Upon a determination of trademark infringement, the Court has wide discretion to determine the exact amount of statutory damages under the Lanham Act of anywhere between "$ 500 and $ 100,000 per work infringed for non-willful infringement." *Microsoft Corp. v. Md. Micro.com, Inc.*, 2003 U.S. Dist. LEXIS 13735, 17-19 (D. Md. 2003) (citing 15 U.S.C. § 1117(c)(1)). In cases of willful use of the counterfeit mark, damages awarded

under the Act are to be "not more than $ 1,000,000 per counterfeit mark."  15 U.S.C. § 1117(c)(2).  The Act also allows for the award of attorneys fees when a case of infringement is exceptional.  15 U.S.C. § 1117(a).  The Fourth Circuit considers infringement exceptional if the conduct was in bad faith or "malicious, fraudulent, willful or deliberate in nature." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) (citing *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir. 1992)); *see also Cardservice Int'l, Inc. v. McGee*, 950 F. Supp. 737, 742 (E.D. Va. 1997) *and Playboy Enters. v. Asiafocus Int'l*, 1998 U.S. Dist. LEXIS 10359, 24-25 (E.D. Va. 1998).

Plaintiffs allege that Defendants knowingly and willfully infringed the DVF mark.  Defendants dispute this characterization, claiming that they did not know there was anything wrong with the way they were using the mark.  Defendant Catherine Snyder asserts that did not think she "was doing anything bad" and that she thought the dresses in question "were leftovers from the factories."  C. Snyder depo. at 138-39. Viewing the facts in the light most favorable to the non-moving Defendants, this Court finds a genuine issue of material fact as to whether Defendants acted willfully and in bad faith and thus that it would be inappropriate to impose damages or attorneys fees without a hearing and further analysis.  Therefore, summary

judgment as to the award of statutory damages and attorneys fees is denied.

      G) <u>Permanent Injunction</u>

Injunctive relief is appropriately granted "to the owner of a registered trademark whose rights to the mark have been infringed on by another's use of a copy or colorable imitation that is 'likely to cause confusion, or to cause mistake, or to deceive.'" *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463 (4th Cir. 1996) (quoting 15 U.S.C. § 1114(1) and *Pizzeria Uno*, 747 F.2d at 1527). The "party seeking an injunction must normally show that it would suffer irreparable injury absent the injunctive relief." *Lone Star Steakhouse,* 43 F.3d at 938 (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)). A permanent injunction, even without an evidentiary hearing, is appropriate "if the affidavits and documentary evidence clearly establish the plaintiff's right to the injunction." *Id.* (internal citations omitted).

The Fourth Circuit has recognized that "irreparable injury regularly follows from trademark infringement." *Id.* at 939 (internal citations omitted). Therefore, a showing of trademark infringement makes it likely that there has been an irreparable injury to reputation. Although the Fourth Circuit "has not explicitly applied this presumption in trademark infringement actions," it has noted that "regardless of any

potential injury to sales or to the mark itself, trademark infringement primarily represents an injury to reputation." *Id.* The *Lone Star* Court did not need to rely on a presumption of injury because "Plaintiffs ha[d] produced adequate evidence of irreparable injury by demonstrating actual consumer confusion [and] specific instances of customer complaints from the confusion." *Id.* Likewise, in this case, DVF produced evidence of specific instances of customer complaints and demonstrated that Defendants intentionally used Plaintiff's mark to capitalize on its reputation, thus inherently creating confusion and injury to DVF's reputation. Additionally, under the Trademark Dilution Act, "[s]ubject to the principles of equity, the owner of a famous mark that is distinctive ... shall be entitled to an injunction" against the use of a mark likely to cause dilution "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 USCS § 1125(c)(1). As established above, Plaintiff has demonstrated that Defendant is liable for diluting the DVF mark. For these reasons, Plaintiff is entitled to a permanent injunction enjoining Defendants from shipping, delivering, distributing, advertising, offering for sale, or selling counterfeit DVF products.

      H) <u>Modify Preliminary Injunction</u>

Defendants have moved to modify the terms of the Preliminary Injunction to allow withdrawal of money from an account subjected to an asset freeze.  Particularly because the Preliminary Injunction did not apply to money earned by Richard Snyder from sources other than the infringement activities, the Court finds that there is not sufficient reason to modify its terms.

## Conclusion

For the reasons stated above, the Court will grant Plaintiff's Motion for Summary Judgment as to the trademark infringement, unfair competition, trademark dilution, and permanent injunction claims and will deny Plaintiff's Motion as to the contributory infringement, damages, and attorneys fees claims.  The Court will deny Defendants' Motion to Modify the terms of the Preliminary Injunction.


September 10, 2007                        _____/s/_____
Alexandria, Virginia                            James C. Cacheris
                                       UNITED STATES DISTRICT COURT JUDGE