IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| DIANE VON FURSTENBERG STUDIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:06cv1356(JCC) |
| v. | ) | |
| | ) | |
| CATHERINE SNYDER and | ) | |
| RICHARD SNYDER | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a bench trial on
October 1, 2007 pursuant to the Complaint filed by Diane Von
Furstenberg Studio ("DVF") against Catherine Snyder, et. al.  The
Complaint sought statutory damages and attorneys fees under the
Lanham Act, 15 U.S.C. §1051 *et seq.*, for counterfeiting,
trademark, and trade dress infringement.

**I.  Findings of Fact**

1.   Plaintiff Diane Von Furstenberg Studio ("DVF") is a designer
     and producer of high-quality dresses and women's apparel.
     DVF products are identified by DVF's federally registered
     trademarks ("DVF Marks").

2.   Defendant Catherine Snyder, ("Catherine Snyder" or "Ms.
     Snyder") is a resident of Herndon, Virginia, and did
     business as Fairfax Trading Company, operating with a
     Virginia business license.  Def.'s Mem. of Law in Opp'n to

1

Pl.'s Mot. for Summ. J.; Def.'s Proposed Findings of Fact.

3.  In the spring of 2003, Catherine Snyder sought to start an internet business. She purchased a "Nuts-And-Bolts Manual" ("Manual") describing how to find and sell goods over eBay, an internet auction site. The Manual laid out guidelines for determining what goods were appropriate to sell. It specifically listed prohibited items, including "Counterfeit Items", and warned against the sale of "Potentially Infringing (copyright and trademark)" goods, including "Replica and Counterfeit Items" and "Unauthorized Copies," as well as impermissible "Authenticity Disclaimers," "Brand Name Misuse," and "Importation of Goods into the United States." Pl.'s exhibit 74.

4.  Catherine Snyder set up an eBay account in the name of Cathy 3254 ("the Website") through which she purchased and sold articles of clothing and other goods.

5.  Ms. Snyder located overseas clothing suppliers and, by the end of 2005 and through most of 2006, used eBay as a marketplace for selling the allegedly designer clothing which she purchased from Chinese vendors. C. Snyder Test., Trial Tr. (unofficial) 29-35, October 1, 2007; Pl.'s exhibits 49-70.

6.  One of the types of items Snyder sold were dresses that she claimed were made by Plaintiff DVF. She ordered these

2

dresses from her Chinese vendors, usually paying around $30-$40 per dress.  Trial Tr. 58:7-17; Pl.'s exhibits 49-70. Genuine DVF dresses retail for approximately $275-$500, a fact which Ms. Snyder knew.  Trial Tr. 58:2-6 (Q: "[Y]ou saw that [the designer dresses] sold for $300, $400, $500?  A (Snyder): Yes.  I believe I might have known that beforehand, yes.")

7.   Catherine Snyder made little attempt to verify the authenticity of the goods, merely going to department stores to see if the dresses there were similar in cut and color to those she ordered from Chinese vendors, without doing a side-by-side comparison, and looking at magazine photos to compare the appearance of the genuine DVF dresses with those she was offering for sale.  *Id.* at 47-50[1]; Def.'s Ex. 27; Trial Tr. 125:1-5.[2]

8.   Catherine Snyder copied successful eBay sellers by putting "authenticity guaranteed" on postings advertising her items

---

[1] Stating:

 I went to the mall just to get an idea of ... for that price what they looked like and just to get an idea of what I was getting from my suppliers was, you know, the same product that was in the stores. ...
  I did not have [the dresses from my suppliers]. I couldn't bring them in side by side, but you got a general feel for the designer, the type of clothing.

[2] Stating:

 I would look at things to make sure.  This is one of my ways of doing that.  If I saw [a picture of a DVF dress] in a magazine, I would pull it out.  Sometimes I was able to find a dress like this.  Then I would have, when it came in, something to compare it to.

3

in an attempt to increase her sales, despite the fact that she was not an authorized seller of DVF products. *Id.* at 39-47.  Ms. Snyder contradicted her deposition testimony during the bench trial, denying that she had made the earlier statement that she "knew that if [she] put authenticity, it would sell better." *Id.* at 44:8-11.  Not only did Catherine Snyder know she was not an authorized seller of DVF products, but she also admitted to recognizing that some of the items she received were not made by DVF. *Id*. at 69:15-19 (stating: "I wasn't sure if it was Diane von Furstenberg because I had never seen it anywhere before. ... So no, I never put that up for sale.").

9.    Without obtaining permission, Catherine Snyder appropriated photographs of models wearing DVF dresses from other websites and used them to illustrate her postings.  Pl.'s exhibit 75; Trial Tr. 38:10-20.[3]

10.   Some of Snyder's customers complained about the quality and authenticity of the dresses they received from her, although

---

[3] Saying:
> Q: [T]hose are the pictures that you just took from somewhere else to attract people to your listings, correct?
> A (Snyder): Oh, yes, yes, yes.
> Q: When you took those pictures, did you ever contact the people who operated the sites from which you took them to see if they would mind if you took the pictures –
> A: No.
> Q: – or to ask if you needed to pay them any royalty or do anything for that?
> A: No.

her testimony on this point was inconsistent.  At her
deposition, Catherine Snyder testified that when she
received returns, "A lot of times people would say I don't
think it's authentic."  C. Snyder. Dep. 83:9-10.  During the
bench trial, however, she answered in the negative when
asked: "A number of your returns were because the buyers
alleged that the dresses were counterfeit, correct?"  Trial
Tr. 64:4-6.  Ms. Snyder denied ever having said that "a
number" or "a lot" of returns were for inauthenticity,
although when confronted with her deposition testimony she
eventually admitted to the possibility of having used the
phrase.  *Id.* at 64:10-15, 66:18-67:15.

11.  Catherine Snyder's suppliers provided merchandise which Ms.
Snyder knew was not of the same quality as genuine DVF
clothing, and stopped purchasing from some suppliers because
of the shoddy merchandise she received from them.  *Id.* at
31:7-12 ("I wasn't happy with the quality.  So I only
ordered from them once."); *Id.* at 34:1-3 ("I only ordered
from [TooMoo] twice, again, because the quality was – it was
inconsistent.").

12.  As well as selling dresses purportedly made by DVF,
Catherine Snyder sold goods bearing other designers'
trademarks.  Two of these trademark owners, Von Dutch in the
summer of 2005 and Anna Sui in the early fall of 2006, gave

notice to Catherine Snyder that she was not authorized to sell their goods by issuing a warning through eBay's Verified Rights Owner ("VERO") program, which exists to allow trademark owners to "prevent the listing of infringing items on eBay."  C. Snyder dep. 80:5-18, 104:16-22; Def.'s Exhibit 20.  After receiving notice that she had been selling counterfeit items, Catherine Snyder did not cease selling brand name goods or even switch suppliers.  C. Snyder dep. 104:16-22 ("I got VERO'd by Anna Sui ... this early fall [2006]"); Trial Tr. 34:10-21 ("So through, I'd say, June until December ['06] the two suppliers I was using were Hong Juan ... and Vivian.").

13. In the fall of 2006, a representative of DVF purchased a dress bearing DVF marks from Catherine Snyder's Website. DVF identified the dress as counterfeit by the marks and label and identified a Herndon, Virginia location as the source of the counterfeit goods.  DVF then filed suit and moved this Court for a temporary restraining and seizure order ("TRO"), order restraining the transfer of assets, order sealing the file, order for expedited discovery, and a preliminary injunction.  On December 7, 2006, this Court granted the motion and issued the requested order ("the Order").

14. On December 8, 2006, the Order was executed upon Snyder's

address in Herndon, Virginia, and DVF seized more than fifty dresses bearing DVF marks, along with a computer and financial records.

15. On December 21, 2006, this Court issued a preliminary injunction against Snyder and her husband, Richard Snyder, and unsealed the case.

16. On December 4, 2006, DVF filed suit against Catherine Snyder for Federal Trademark Counterfeiting and Infringement, Unfair Competition and False Designation of Origin, Federal Trademark Dilution, Common Law Unfair Competition, and violation of the Virginia False Advertising Statute.  This Court granted Defendant's Motion for Summary Judgment in part and granted Defendant's Motion for Voluntary Dismissal of Defendant Richard Snyder and claims regarding Defendant's willfulness.  After the grant of those Motions, the claims remaining before this Court are statutory damages and attorneys fees under the Lanham Act.

## II. Analysis

### A. Statutory Damages

On September 10, 2007, this Court granted DVF's motion for summary judgment on counterfeiting claims of trademark infringement, unfair competition, and trademark dilution, and awarded the requested permanent injunction.  On September 24, 2007, this Court granted DVF's motion and dismissed, with

prejudice, DVF's claims regarding the Snyders' willfulness and Defendant Richard Snyder's contributory infringement, leaving Catherine Snyder as the only remaining defendant and the question of the amount of statutory damages for the infringement of one mark and attorneys fees to be awarded to DVF the only issues before the Court.

Pursuant to the Lanham Act, 15 U.S.C. § 1117(c), "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover ... an award of statutory damages ... in the amount of  (1) not less than $ 500 or more than $ 100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.*  Statutory damages are to be determined by the Court. *See, e.g. Tobinick v. Scripps Clinic Med. Group,* 81 Fed. Appx. 677 (9th Cir. 2003)("the issue of statutory damages under 15 U.S.C. § 1117(c) [is] a matter within the sole province of the court"); *Int'l Bancorp, L.L.C. v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco*, 192 F. Supp. 2d 467, 490-91 (E.D. Va. 2002) (awarding statutory damages on a motion for summary judgment). Under 15 U.S.C. § 1117(c), DVF may elect statutory damages before final judgment has been entered without the need for a jury determination.  Courts have discretion in their determination of the amount of statutory damages to be awarded in each case. *See, e.g., Dick's Sporting Goods v. Dick's Clothing &*

8

*Sporting Goods,* 12 F. Supp. 2d 499, 500 (D. Md. 1998).

DVF claims that it is entitled to maximum statutory damages of $100,000 for the infringing mark "DIANE VON FURSTENBERG." Catherine Snyder argues that DVF is not entitled damages because "damages ... under the Lanham Act are limited to those sustained after a defendant receives notice" and Catherine Snyder did not sell any dresses after she became aware of the charges. Def.'s Reply Br. at 2. Catherine Snyder cites 15 U.S.C. § 1111 for her assertion, but neglects the portion of the statute incorporating the provisions of Lanham Act § 22. 15 U.S.C. § 1111 (reading, "Notwithstanding the provisions of section 22 hereof ... "). Section 22 holds that "[r]egistration of a mark on the principal register ... shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072. Because DVF's marks were properly registered, Catherine Snyder had constructive notice of their ownership and Lanham Act statutory damages are appropriate. Catherine Snyder also argues that DVF has elected statutory damages under 15 U.S.C. § 1117(c)(2) and cannot now elect damages under 15 U.S.C. § 1117(c)(1). However, the clear language of the statute allows DVF to elect statutory damages at any time before final judgment, leaving it to the Court's discretion to set the amount of damages, with an increase of the maximum award available "if the court finds that the use of the counterfeit mark was willful." 15

9

U.S.C. § 1117(c).  Therefore, DVF merely elected statutory damages under 15 U.S.C. § 1117(c), and it is up to this Court to determine which damages cap applies.

Courts are given great discretion in their determination of the amount of statutory damages to be awarded in each case under the Lanham Act.  *See, e.g., Dick's Sporting Goods* 12 F. Supp. 2d at 500.  Because the statute provides no specific guidelines on how to determine the appropriate level of statutory damages, many Courts have looked to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), as analogous. *See, e.g., Commercial Law League of Am., Inc. v. George, Kennedy & Sullivan, LLC*, 2007 U.S. Dist. LEXIS 68182, *10-11 (S.D. Tex. 2007)(applying Copyright Act factors to determine an award of $10,000 where "[t]here is no evidence of the value of the infringing material or any loss to [Plaintiff] other than its attorney's fees and costs in this suit"); *Nike, Inc. v. B&B Clothing Co.*, 2007 U.S. Dist. LEXIS 37195 (E.D. Cal. 2007)(applying Copyright Act factors to award $100,000 for four counterfeit mark as "at least commensurate with the value of plaintiff's famous marks"); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp.2d 123, 125 (S.D.N.Y. 2003)(applying Copyright Act factors to find an award of $550,000 for multiple infringements to be just, given the defendants' willfulness and use of the internet to make sales); *Louis Vuitton Malletier et al. v. Veit*, 211 F.

Supp. 2d 567, 583-85 (E.D. Pa. 2002)(applying Copyright Act factors to find that the "case certainly calls for a high damage award, given the egregious conduct of the Defendants and the use of the internet").  Courts have applied Copyright Act factors

> such as: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Tiffany (NJ) Inc.,* 282 F. Supp. 2d at 125 (quoting *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986))(internal quotations omitted); *see also Commercial Law League*, 2007 U.S. Dist. LEXIS 68182 at *9-10.  This Court will consider these factors in determining the amount of damages to be awarded.

### 1. Willfulness

This Court notes that there was ample evidence produced at the bench trial to demonstrate that Catherine Snyder was not an innocent infringer.  Defendants who "premeditatedly sought the services of [others] to produce counterfeit [trademarked]

11

insignias and upon receiving such goods sold them as legitimate [trademarked] products" are decidedly "not innocent infringers." *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982).   Deliberate attempts by defendants to profit by passing off counterfeit goods as legitimate brand name products are particularly problematic.

Catherine Snyder's Manual about selling on eBay explained that the seller is "responsible for making sure that ... selling your item(s) is legal in the eyes of the law," with a list of explicit steps to ensure that an item is not prohibited, questionable, or infringing.   Pl.'s exhibit 74.   Plaintiff presented evidence to suggest that Ms. Snyder had reason to know that she was not an authorized seller of DVF products and that the dresses she was selling were not authentic.   In addition, Catherine Snyder was impeached several times by DVF, and this Court does not consider her to be a truthful witness.   *See, e.g.,* Trial Tr. 44:8-11, 64:10-15, 66:18-67:15.   However, the factor of willfulness will not be included in the damages calculation by this Court as it has been removed from consideration by DVF, and therefore the Court will rely upon other factors for its determination of statutory damages.

2. Profit and Revenue

Expenses and profits of defendants and revenues lost by plaintiffs are difficult to determine in counterfeiting cases,

12

which is why the Lanham Act has made specific provisions for awarding statutory damages. *See, e.g., Louis Vuitton*, 211 F. Supp. 2d at 583 (citing S. Rep. No. 177, 104th Cong. 1995)(explaining that Congress enacted amended the Lanham Act to provide statutory damages because of the difficulty of proving actual damages in counterfeiting case); *see also Guess?, Inc. v. Gold Ctr. Jewelry*, 997 F. Supp. 409, 411 (S.D.N.Y. 1998)(emphasizing the importance of statutory damages in counterfeiting cases because "proof of the extent of the plaintiff's injury or the counterfeiters' profits [can be] impossible as a practical matter.").

Catherine Snyder claims to have "lost money on sales of plaintiff's dresses," or at least that her profits were fairly low.  Defs.' Reply to Pl.'s Mot. for Vol'y Dismissal at 11; Trial Tr. 172:11-12. However, DVF presented undisputed evidence that Catherine Snyder purchased hundreds of fake designer dresses for resale.  Pl.'s exhibit 49-70.  In infringement cases such as this one, where a defendant is capitalizing on the popularity of an established brand by selling counterfeit copies of its products, the loss to a plaintiff is not merely the dollar sales of the counterfeit goods.  Even if "some buyers of the defendants' [dresses] would not have been willing to pay the higher price necessary to purchase one of the plaintiff's," it is undeniable "[t]hat the plaintiff's sales were adversely affected," despite

13

the fact that "the injury suffered by the plaintiff in its reputation for its goods [is not] mathematically convertible into a fixed dollar amount." *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987).  Catherine Snyder was responsible for 1.3% of the sales of DVF products on eBay.  Trial Tr. 172:15.  Even if the actual dollar amount of her profits was low, she caused damage to DVF by selling counterfeit dresses as "authorized."  Pl.'s Exhibit 99.  Statutory, rather than actual, damages are appropriate in this case, because even if Catherine Snyder's actual profits are ascertainable, they do not accurately represent the loss suffered by DVF.

### 3. Value of the Mark

The DVF mark is highly valued and its infringement causes loss of goodwill among potential customers.  *See, e.g.,* *Chanel, Inc. v. Gordashevsky*, 2007 U.S. Dist. LEXIS 6576 at *26 (D.N.J. 2007).  Catherine Snyder utilized the extensive market provided by the internet to advertise her counterfeit goods.  Courts have increased damages awards when defendants sell over the internet, emphasizing that the forum gives counterfeit sellers a "virtually limitless number of customers," *Rolex Watch U.S.A., Inc. v. Jones*, 2002 U.S. Dist. LEXIS 6657, at *16 (S.D.N.Y. Apr. 17, 2002), and that "given the scope of the internet supermarket, [defendants'] sale offerings are presumptively quite high." *Louis Vuitton*, 211 F. Supp. 2d at

14

584; *see also Tiffany (NJ) Inc.,* 282 F. Supp. 2d at 125.   The

number of potential customers provided by Catherine Snyder's

choice of eBay as her marketplace compounds the problem of damage

to DVF.   Not only was Catherine Snyder selling counterfeit goods,

but she also passed herself off as an "authorized" seller of

DVF's products, creating an association in customers' minds

between the luxury brand DVF and the flea market aspect of eBay's

auction site.   The combination of the size of the internet

marketplace and the creation of association in a customer's mind

between the DVF brand and an auction site further magnifies the

harm done to DVF.

### 4. Deterrence and Discouragement

Especially given the difficulty internet infringement

creates for companies seeking to police unauthorized sales of

their goods, deterrence is an important consideration for this

Court. *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D.

494, 501 (C.D. Cal. 2003)(awarding the maximum statutory damages

under 15 U.S.C. § 1117(c) because "deterrence of future

infringement is an important factor in determining damages.").

Although Catherine Snyder has been enjoined from any future

selling of DVF products, which satisfies the need to discourage

her counterfeiting activity, the market for infringed items is

considerable, especially on internet auction sites.   This Court

must take into account the need to deter others engaged in

15

selling counterfeit goods, particularly those whose marketplace is the internet.

### 5. Defendant's Cooperation

Catherine Snyder was subject to a TRO and all of her records were seized by DVF, leaving her little opportunity to voluntarily cooperate in providing records.  She did demonstrate some willingness to cooperate: she ceased selling counterfeit DVF goods after execution of the seizure, and, by her account, has ceased all operation of eBay sales.  Ms. Snyder also voluntarily turned over further dresses that were returned to her by customers or left behind by DVF after the December 8, 2006 search.  However, during the court proceedings, Catherine Snyder continually refused to take responsibility for her actions, claiming that she had done nothing wrong.  She argued throughout the case, even after summary judgment was entered against her, that the dresses were not counterfeit, that she did not even know that dresses could be counterfeit, that customers were satisfied with the quality of the dresses they received, that the dress labels did not have a required marking on it so that she did not have constructive knowledge that she was infringing a trademark, and that because DVF was a member of eBay's VeRO program and did not issue a VeRO notice to her, she should not be held responsible for selling trademark infringing dresses.  *See, e.g.,* Decl. Of Catherine Snyder in Opp'n to Pl.'s Mot. to Voluntarily

16

Dismiss Certain Claims; Def.'s Reply to Pl.'s Mot. for Voluntary Dismissal at 5, 9, 12; Facts in Dispute Showing There Are Genuine Issues for Trial at 2, 4.

All of the above factors – inability to determine the exact profits of Catherine Snyder or revenue lost to DVF, the value of the mark in question, the importance of deterring others from internet sales of counterfeit goods, the inapplicability of Catherine Snyder's willfulness, the level of Catherine Snyder's cooperation, and the discouraging effect of the injunction that has been entered – should be reflected in the amount of statutory damages. Upon consideration of each component of a statutory damage determination, this Court holds that DVF should be awarded $100,000 for the infringed mark.

B. Attorneys Fees

Under the Lanham Act, attorneys fees may be granted in "exceptional" trademark infringement cases where "the defendant's conduct was 'malicious, fraudulent, willful or deliberate in nature.'" *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) (quoting *Scotch Whisky Ass'n v. Majestic Drilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir. 1991)); 15 U.S.C. § 1117(a). In addition, the "prevailing plaintiff must 'show that the defendant acted in bad faith.'" *People for the Ethical Treatment of Animals,* 263 F.3d at 370 (quoting *Scotch Whisky*, 958 F.2d at 599); *see also Retail*

17

*Servs. v. Freebies Publ'g*, 364 F.3d 535, 551 (4th Cir. 2004). Because the Court granted, with prejudice, DVF's motion to dismiss its claims that the Snyders acted willfully and in bad faith (as confirmed in a Conference Call with Chambers on September 26, 2007), DVF cannot not now allege bad faith, making attorney's fees inappropriate in this case.

### III. Conclusions of Law

1.  This Court has original subject matter jurisdiction of this action for violation of the Lanham Act, 15 U.S.C. §§ 1501 *et seq.*, pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) and (b), and 15 U.S.C. §§ 1116 and 1121. Personal jurisdiction over Catherine Snyder is proper because she is domiciled and does business in the State of Virginia. Va. Code Ann. § 8.01-328.

2.  Summary Judgment was granted to DVF holding Catherine Snyder liable for counterfeiting in violation of the Lanham Act on DVF's claims of trademark infringement, unfair competition, and trademark dilution. Under the Act, DVF has elected statutory damages for the mark which Catherine Snyder infringed.

3.  Attorney's Fees are inappropriate in this case because DVF dismissed its claims that Catherine Snyder acted willfully and in bad faith.

    For the foregoing reasons, DVF is awarded $100,000 in

statutory damages.

An appropriate Order shall issue.


October 23, 2007                    _____/s/_____
Alexandria, Virginia                        James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE